Franceslon FOREHAND, Naomi Berry, Vivian Johnson, Virginia Jackson, Ethel Germany, Sadie Bouie, Myles Brown, Jeanette Wynn, and Hollis McClendon, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

FLORIDA STATE HOSPITAL AT CHATTAHOOCHEE; Department of Health and Rehabilitative Services, State of Florida; and The State of Florida, Defendants.

No. TCA 83–7107–WS.

United States District Court,
N.D. Florida,
Tallahassee Division.

Nov. 5, 1993.

Thomas A. Warren, Thomas A. Warren P.A., Kent Spriggs, Spriggs & Kidder, Tallahassee, FL, Jacob A. Rose, Haygood, Williams, Olds & Rose, West Palm Beach, FL, for plaintiffs.

Harry F. Chiles, Charles Alan Finkel, Richard Raleigh Whidden, Jr., Atty. General's Office, Dept. of Legal Affairs, Tallahassee, FL, Charles T. Collette, Douglas A. Mang, Bruce Alexander Minnick, Mang, Rhett & Collette, P.A., Tallahassee, FL, for defendants.

## ORDER ADOPTING, IN PART, THE SPECIAL MASTER'S REPORT AND RECOMMENDATION

STAFFORD, District Judge.

In this action, the plaintiffs have alleged that the defendants engaged in unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, Title 42, United States Code, Sections 2000e–17. Beginning on October 14, 1986, a fifty-five day bench trial was held before special master Everett P. Anderson. Before the court at this time are the special master's report and recommendation (document 375), including his findings of fact and conclusions of law, and the parties' objections thereto (documents 384 & 398).

## I. BACKGROUND

On September 28, 1981, Franceslon Forehand filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"). In her complaint, she alleged that she was denied a promotion on September 25, 1981, at the Florida State Hospital in Chattahoochee, Florida, on the basis of her race. Seven months later, without alleging any additional personal harm, she amended her EEOC complaint to state that she felt the alleged discrimination against her was part of a pattern and practice of racially discriminatory recruitment, hiring, job assignments, promotions, demotions, terminations, lay-offs, reprimands, seniority and affirmative action programs at the defendant hospital. *See* document 146, Composite Ex. A.

Finding no merit to Forehand's specifically pleaded promotion claim, the EEOC issued a no-probable-cause notice of right to sue on January 3, 1983. The notice was accompanied by a letter explaining that the EEOC made no determination regarding the general pattern and practice allegations of racial discrimination raised in Ms. Forehand's amended charge. Document 146, Composite Ex. A.

On April 6, 1983, less than ninety days after she received a right to sue letter from the EEOC, Forehand filed a class action employment discrimination complaint in this court. Eight other employees of the Florida State Hospital—none of whom received a notice of right to sue notice within the ninety-day period preceding April 6, 1983—joined Forehand as co-plaintiffs in the lawsuit. The plaintiffs alleged that because of their race, they were denied promotions for which they were well qualified. They also alleged that they were adversely affected by the subjective decision-making of the hospital's white supervisors and administrators in the area of performance evaluations. One of the named plaintiffs, Hollis McClendon, alleged that he experienced disparate treatment in the terms and conditions of his employment, including his duty assignments. None of the named plaintiffs alleged that he or she was ever demoted, reassigned, or disciplined on the basis of race.

On July 26, 1985, over the defendants' objections, this court granted the plaintiffs'

motion to certify a plaintiff class, defined by the plaintiffs as follows:

> All past, present and future black employees of Florida States Hospital, Chattahoochee, Florida, who, after 24 March 1972 have been adversely affected on account of their race by the Defendants' use of their subjective decision-making processes regarding promotions, demotions, reassignments, job performance evaluations, and disciplinary actions.

*See* documents 179 & 183. The court later denied the defendants' request to narrow the class to include only those incumbent black employees who suffered a denial of promotion after a date in late 1980. *See* documents 213, 236, & 271.

After an exhaustive fifty-five day trial, the special master recommended that judgment be entered in favor of the defendants. This court has now reviewed the extensive record in this case, including the special master's report and recommendation, and has determined that the report and recommendation should be adopted to the extent explained below.

## II. *DISCUSSION*

### A. *Class Certification*

In *General Telephone Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the Supreme Court, for all practical purposes, repudiated the across-the-board theory of Title VII class actions. Under the across-the-board theory, a plaintiff was permitted to raise class claims that were different in type from his or her own personal claims. *See Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir.1969) (sanctioning the across-the-board theory). Courts allowing certification of an across-the-board class generally reasoned, or assumed, that when an employer discriminated on the basis of a class characteristic such as race, the discrimination pervaded—in an across-the-board fashion—all of the employer's personnel policies and practices.

In rejecting automatic application of this across-the-board theory, the Supreme Court said in *Falcon:*

> there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Falcon*, 457 U.S. at 157, 102 S.Ct. at 2370. The Supreme Court cautioned against use of a presumption that generalized class claims are encompassed within the personal claims of an individual plaintiff. Instead, the Court stressed that a Title VII class action should be certified only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161, 102 S.Ct. at 2372; *see also, Griffin v. Dugger*, 823 F.2d 1476 (11th Cir.1987), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988).

In this case, the court granted the plaintiffs' motion to certify a broad-based, if not an across-the-board, class—a class that includes putative plaintiffs who allegedly suffered not only from discriminatory promotions, as did the plaintiffs, but also from a variety of other types of discriminatory acts, some of which were never experienced by any of the plaintiffs. Without indicating, or even estimating, how many putative class members suffered from what type of discriminatory employment practice, plaintiffs' counsel advised the court at the certification hearing that his clients wanted to represent *all* black employees at the Florida State Hospital. Indeed, Rule 23 numerosity was based on a rough estimate of total black employees and not upon a careful estimate of black employees having specific grievances similar to those of the plaintiffs. Even if the court were to agree that the plaintiffs' case encompassed a challenge to a generalized employment practice—use of subjective decision-making by white supervisors—that allegedly affected various types of employment decisions not limited to the particular type of employment decision—denial of promotion—affecting the plaintiffs, the plaintiffs and the

court were required to do more than simply *assume* that all black employees suffered from the alleged subjective decisionmaking. Certainly, at trial, it became evident that such an assumption was faulty.

■ Despite their earlier protestations that the class claims encompassed discrimination manifested in various ways not limited to promotions, the plaintiffs would now attempt to preserve class certification by arguing that the case was, in fact, tried as a promotion-related class action and not as an across-the-board class action. Such argument, however, ignores the fact that this court never heard evidence or argument about, nor did it ever consider or determine, whether a class, appropriately limited as to scope and size, would satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. Admittedly, the class was not unlimited: it included only incumbent employees and did not include applicants with hiring claims. Still, the class that was certified was not carefully defined, was not appropriately limited, and was not properly evaluated under Rule 23. "Rigorous analysis" consistent with the teaching of *Falcon* was missing, and the result was class certification that was, and is, improper.

Rule 23 provides that an order of certification "may be altered or amended before the decision on the merits." Fed.R.Civ.P. 23(c)(1). Calling a certification order "inherently tentative," *Falcon*, 457 U.S. at 160, 102 S.Ct. at 2372, the Supreme Court has emphasized that a judge remains free at any time to modify a certification order based on subsequent developments in the litigation. *Id.* While it is unfortunate that class decertification comes so late in the litigation of this case, it is nonetheless required where, as here, the court determines that the prerequisites of Rule 23 were not satisfied.

Had an appropriate analysis been undertaken at the time of certification, it is conceivable that *some* class could have been properly certified. At this late stage in the proceedings, however, given the evidence that was presented at trial, the court declines to certify a new and different class. The case shall be treated, therefore, as an action involving nine individual plaintiffs and not as a Rule 23 class action.[1]

### B. *Pattern and Practice Claims*

Plaintiffs have alleged in this case that the defendants engaged in a pattern and practice of racial discrimination. Although, in their complaint, they alleged a widespread pattern of unlawful discrimination that purportedly infected a wide variety of company practices, including promotions, hirings, discharges, and reprimands, the plaintiffs focused their proof at trial on the defendants' alleged discriminatory promotion practices.[2] More particularly, they attempted to prove a long-term systemwide pattern and practice of racial discrimination that affected a large number of black individuals seeking promotions over a long period of time. While narrowing the focus, however, the plaintiffs continued to characterize the case as a pattern and practice action.

Interestingly, Title VII confers specific authority to bring pattern and practice actions upon the EEOC, and upon the Attorney General of the United States in certain instances, but not upon private-sector litigants. *See* 2 Arthur Larson & Lex K. Larson, *Employment Discrimination: Procedures & Remedies* § 48.42(a) (describing the chronology of pattern and practice jurisdiction); *see also* 42 U.S.C. § 2000e–6(e) (providing the EEOC with authority to bring pattern and practice actions); *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (recognizing that "[t]he plaintiff in a pattern-or-practice action is the

1. Although the special master did not specifically recommend decertification of the class, he nevertheless concluded that the named plaintiffs could not litigate class claims. This court does not agree with the special master's reasoning—which will not be detailed here—but agrees that class claims should not be litigated in this action.

2. Contrary to what they now suggest, the plaintiffs did not limit their proof at trial *only* to promotions. A number of the anecdotal witnesses testified about a variety of alleged discriminatory actions, including—in addition to promotions—demotions, assignment of duties, suspensions, reprimands, transfers, and reassignments.

Government"). Many courts have nonetheless entertained "pattern and practice" actions where private litigants have alleged injury resulting from a company-wide policy of discrimination. *See, e.g., Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546 (11th Cir.), 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). While most such cases have been litigated as large class actions, private-sector pattern and practice claims have also been entertained in actions that involve, as this case does, a limited number of individual plaintiffs. *See Cox,* 784 F.2d at 1559 (recognizing the relevance of pattern and practice evidence in a case involving several individual, rather than a class of, plaintiffs).

■ Whether brought by the government or by private-sector litigants, pattern and practice actions are usually bifurcated at trial into a liability phase and a remedial phase. In the liability phase, the plaintiff must prove by a preponderance of the evidence that the defendant engaged in a pattern or practice of unlawful discrimination in various company policies—that is, the plaintiff must prove that "discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *Teamsters,* 431 U.S. at 336, 97 S.Ct. at 1855. If the plaintiff succeeds in the first phase, then, at the remedial phase, the scope of individual relief is litigated.

■ Consistent with the usual pattern and practice procedure, trial in this case began as a liability-phase proceeding. To prove their case, the plaintiffs introduced both documentary statistical evidence as well as expert and anecdotal testimony suggesting that racial discrimination was a pervasive and longstanding practice at the Florida State Hospital. The defendants countered with evidence suggesting just the opposite: the absence of a pattern and practice of discriminatory conduct. After hearing testimony and argument for fifty-five days, and following an extended period of post-trial briefing, the special master announced his recommended ruling in favor of the defendants and against the plaintiffs on the pattern and practice claim. In his report to this court, the special master summed up his ruling by stating that the "credible statistical evidence failed to show a pattern and practice of either disparate treatment or disparate impact in the promotion of black persons as a class at the Florida State Hospital." Document 375 at 51. The evidence provided by the anecdotal witnesses similarly failed to persuade the special master. While he conceded that the anecdotal witnesses provided evidence of isolated incidents of racially-motivated conduct, he found that these incidents did not rise to the level of a pattern or practice that affected the promotion practices at the hospital as a whole.

■ Finding support for the special master's recommendation not only in the evidence presented at trial but also in the law, the court accepts the special master's determination that the plaintiffs failed to establish a systemwide pattern and practice of discrimination at the defendant Florida State Hospital. The court thus adopts the special master's recommended ruling on the plaintiffs' pattern and practice claim. The effect of such adoption is to leave the plaintiffs with the burden of proving—without assistance from the pattern and practice evidence—that each actionable promotion-denial suffered by the plaintiffs was the product of intentional discrimination on the part of the defendants. The plaintiffs, in other words, can neither bolster their individual claims for relief with proof that the defendants engaged in a systemwide practice of racial discrimination, nor can they—as they would like—shift the burden of proof to the defendants. *See Teamsters,* 431 U.S. at 362, 97 S.Ct. at 1868 (*if* the government is successful in establishing an employer's systematic pattern and practice of discrimination, then the burden shifts to the employer to demonstrate that individual employees were denied employment opportunities for lawful reasons). In essence, with this court's adoption of the special master's findings about the pattern and practice proof, the focus of the case shifts to the plaintiffs' individual claims of disparate treatment.

### C. *The Relevant Time Period*

Title VII requires a plaintiff in a deferral state such as Florida to file charges with the EEOC within three hundred (300) days after the alleged unlawful employment practice oc-

curred. Forehand filed her charge of discrimination with the EEOC on September 28, 1981. Using the 300–day period as a starting point, the special master determined that the plaintiffs' promotion claims should be confined to the period starting on December 3, 1980, three hundred days before Forehand's charge was filed, and ending many years later when trial was concluded in 1987. The defendants, having advised the court that "[t]he master's holding in this regard was unquestionably sound law," · document 398 at 30 n. 14, have not objected either to the starting or to the ending date chosen by the special master. Plaintiffs, on the other hand, have suggested that violations occurring as early as August 1979 are actionable given the continuing nature of the defendants' alleged discriminatory conduct.

■ In seeking relief for violations that allegedly occurred before December 3, 1980, the plaintiffs rely on the "continuing violation" doctrine. Under such doctrine, the EEOC filing period encompasses the entire time that a plaintiff continues to be exposed to the challenged acts of discrimination. The Fifth Circuit articulated the standard for determining whether an employment practice constitutes a continuing violation in *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241 (5th Cir.1980):

> Where an employee charges an employer with continuously maintaining· an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice. However, where the employer ·engaged in a discrete act ·of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the requirement of 42 U.S.C. § 2000e–5(e) that the plaintiff file his charge of discrimination within 180 days of the discriminatory act.

*Gonzalez*, 610 F.2d at 249 (citations omitted). Consistent with the *Gonzalez* standard, the court must distinguish between the " 'present consequence of a one-time violation,' which

does not extend the limitations period, and the 'continuation of the violation into the present,' which does." *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792 (11th Cir. 1992) (quoting *Webb v. Indiana Nat'l Bank*, 931 F.2d 434, 438 (7th Cir.1991)).

■ Although many courts have found the continuing violation doctrine inapplicable where employees are denied—on one or more occasions—the opportunity to fill specific, sporadic vacancies, the doctrine has been applied where promotion denials are the result of a continuing policy of discrimination. *Compare Milton v. Weinberger*, 645 F.2d 1070 (D.C.Cir.1981) (finding each of six promotion denials to be a separate event that triggered a separate limitations period) *with Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir.1983) (finding a continuing system of discriminatory promotions sufficient to extend the limitations period). Plaintiffs in this case contend that the continuing violation doctrine applies because they not only alleged but also proved a pattern and practice of discriminatory promotion denials. They concede, however, that *if* their pattern and practice claim fails, the continuing violation doctrine does *not* apply. Document 406 at 10.

The special master found no continuing violations because—he thought—the plaintiffs failed to prove a system, or a pattern and practice, of racially discriminatory promotions at the Florida State Hospital. The master found that the challenged promotion denials were the products, not of a continuing policy of discrimination, but of discrete acts involving different decisionmakers, different employees, different times, different hospital units, and different selection processes. Having adopted the special master's recommendation regarding the pattern and practice proof, and being otherwise unable to say that the special master was clearly erroneous in finding that the plaintiffs' promotion denials were discrete events, the court accepts the master's finding that the continuing violation doctrine has no application in this case. Thus, the appropriate starting point for actionable conduct in this case is December 3, 1980. Claims arising before that date are barred.

## D. *Conditions Precedent*

Title VII permits an aggrieved employee to seek relief in federal court provided the complainant files suit within the time allotted by Title VII and provided administrative remedies are first exhausted. 42 U.S.C. § 2000e–5(f)(1). These procedural requirements are not jurisdictional prerequisites to suit in federal court but, instead, are conditions precedent to suit, subject to waiver, estoppel, and equitable tolling. *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992 (11th Cir.1982). Where, as here, a defendant specifically denies that the necessary conditions precedent have been satisfied, the plaintiff bears the burden of proving compliance with the requisite preconditions.

Review of the record convinces this court that the special master correctly determined that at least one plaintiff, Franceslon Forehand, satisfied the conditions precedent to suit in this court. The evidence established that (1) Forehand filed a charge with the EEOC within three hundred days of the date she was denied promotion; (2) the EEOC investigated the charge, informed Forehand that the charge—found to be untrue—was being dismissed, and issued her a no-probable-cause notice of right to sue; and (3) she filed suit within ninety days of the date she received her right to sue letter. In other words, Forehand proved that she both exhausted her administrative remedies and filed suit in federal court in a timely manner.

Before trial, both the special master and this court rejected the defendants' argument that Forehand failed to satisfy the conditions precedent to suit because her right to sue letter was issued by the EEOC rather than the United States Attorney General. While Title VII indeed requires a letter from the Attorney General when a governmental agency is the respondent/defendant, the court found before trial, and it finds now, that equitable modification of the letter requirement is appropriate where, as here, (1) the Code of Federal Regulations, 29 C.F.R. § 1601.28(d), provided that the EEOC, rather than the Attorney General, would issue the letter when, as in this instance, charges against a governmental agency were dismissed; (2) the Justice Department took the position that, under the pertinent regulation, the EEOC—*not* the Attorney General—should issue the right to sue letter upon dismissal of charges against a governmental agency, *see Dougherty v. Barry*, 869 F.2d 605 (D.C.Cir.1989) (explaining how, in 1980, the Justice Department and the EEOC agreed to have the EEOC issue right to sue notices when charges against governmental bodies were dismissed); and (3) it may well have been futile for Forehand to request a letter from the Attorney General. *See Townsend v. Oklahoma ex rel. Oklahoma Military Dep't*, 760 F.Supp. 884 (W.D.Okla.1991) (concluding that—given the Attorney General's reliance on the relevant regulation—the plaintiff's unsuccessful effort to obtain a right to sue letter from the Attorney General was a futile step that needlessly delayed the litigation for nearly a year).

The special master also correctly determined that plaintiffs Wynn and Johnson did *not* independently satisfy the conditions precedent to suit. Complaining about harassments and intimidations relating to terms and conditions of employment, Wynn filed a timely charge with the EEOC in 1980, received a right to sue letter late in October 1981, failed to file suit within ninety days thereafter, and thus allowed her claim to lapse. *See* document 146, Composite Ex. E. Johnson, complaining that she was denied a promotion on January 4, 1982, filed a timely charge of racial discrimination with the EEOC on March 27, 1982, later withdrew her charge, and consequently never received a notice of right to sue. *See* document 146, Composite Ex. C. Without a right to sue letter, or even an entitlement to such a letter, Johnson could not independently maintain an action in federal court.

Unlike Wynn and Johnson, who each filed only one EEOC charge, plaintiffs Bouie, Berry, Jackson, Germany and McClendon filed multiple charges with the EEOC. In addition to filing charges in 1983, each of these plaintiffs filed EEOC charges at times before 1983. In at least one case, the pre–1983 charge was withdrawn by the complainant. In other cases, the pre–1983 complaints were dismissed by the EEOC because the

complainants failed to cooperate in the administrative investigation of the charges. For whatever reason, these plaintiffs failed to timely pursue their pre–1983 charges in federal court. Accordingly, as the special master correctly found, plaintiffs Bouie, Berry, Jackson, Germany and McClendon may not rely upon their pre–1983 EEOC charges to independently satisfy the conditions precedent to suit in this case.

■ Six plaintiffs—Berry, Bouie, Jackson, Germany, McClendon, and Brown—filed EEOC charges in 1983, either a few days before or a few days after this suit was filed. Needless to say, these plaintiffs had not received, nor were they entitled to receive, notices of right to sue at the time suit was filed. In each case, contrary to the procedures specified by Congress, these plaintiffs received their notices of right to sue *after* the federal court complaint was filed. Berry, who filed an EEOC charge on April 2, 1983, just four days before suit was filed, received her notice of right to sue little more than two months later. Her charge was dismissed by the EEOC because she failed to cooperate in the investigation of the charge. *See* document 146, Composite Ex. A at 8–12. Bouie, Jackson, Germany, McClendon, and Brown filed EEOC charges on various dates after suit was filed on April 6, 1983. Each of the five was issued a notice of right to sue on June 21, 1983, before the expiration of the statutory 180–day EEOC conciliation period, before there was an opportunity for EEOC investigation and conciliation, and after plaintiffs' counsel sent the following request to the EEOC district director:

> Our reason for filing the charge of discrimination with the EEOC was to perfect Title VII jurisdiction in this lawsuit. Because we feel that a conciliation of both class and individual aspects of this charge will not be possible without judicial intervention, *WE REQUEST A RIGHT–TO–SUE LETTER.*

*See* document 146, Composite Ex. A at 1. The five were specifically advised that right-to-sue notices were being issued at their request and that, with issuance of the notices, the EEOC was terminating any further processing of their charges. *See* document 146, Composite Ex. A at 13–31, 43–47. The early notices did not contain a certification that the EEOC would likely be unable to complete its administrative processing within 180 days from the filing of the charges, although such certification was required by federal regulation for early issuance of right-to-sue notices, *see* 29 C.F.R. § 1601.28(a)(2), (d)(2) (1983); and the notices were not issued by the Attorney General, despite a regulation requiring issuance by the Attorney General rather than the EEOC when letters were requested in cases involving a governmental agency. 29 C.F.R. § 1601.28(d)(2) (1983). In an effort to correct this latter deficiency, in 1986, years after suit was filed, plaintiffs Jackson, Germany, Bouie, Brown, and McClendon requested and received right-to-sue notices from the proper issuing authority. Like the former notices, however, these latter notices were requested by these plaintiffs *not* because the EEOC in any way failed to perform its statutory function—a function that Forehand's co-plaintiffs never expected or even wanted the EEOC to perform—but instead because the plaintiffs thought receipt of letters from the Attorney General might eliminate concerns about their entitlement to sue in federal court.

Relying principally on a Fifth Circuit case, *Pinkard v. Pullman–Standard Div., Pullman, Inc.,* 678 F.2d 1211 (5th Cir. Unit B 1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983)[3], the special master concluded that procurement of a right to sue notice after suit was filed cured the failure of plaintiffs Bouie, Jackson, Germany, Brown, and McClendon to follow the Title VII procedures specified by Congress.[4] Thus, for these plaintiffs, the special master was willing to equitably modify the conditions

---

3. The Eleventh Circuit has adopted as precedent the post-September 30, 1981, decisions of a Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.,* 667 F.2d 33, 34 (11th Cir. 1982).

4. Perhaps through oversight, the special master failed to include Berry in this group of plaintiffs who received notices of right to sue after suit was filed.

precedent to suit, just as the Fifth Circuit did for the *Pinkard* plaintiffs.

In *Pinkard*, the plaintiffs filed suit four days after they filed their charges with the EEOC. When the 180-day statutory period had elapsed, and approximately four months before trial was scheduled to begin, plaintiffs received a right to sue letter from the EEOC. Many months later, indeed, seven months after the end of trial, the district court dismissed the plaintiffs' Title VII claims, holding that jurisdiction was lacking because the plaintiffs failed to await the issuance of their right to sue letters before filing suit. In reversing the district court, the Fifth Circuit held that receipt of a right to sue letter was not a jurisdictional prerequisite to suit but was instead a condition precedent, subject to equitable modification. The Fifth Circuit concluded that plaintiffs' receipt of their right to sue letters more than 180 days after they filed charges with the EEOC, while their federal suit was pending but before trial had begun, cured plaintiffs' failure to initially satisfy the requisite conditions precedent. The court noted that after the passage of 180 days, the plaintiffs were entitled to obtain their statutory letters simply upon request, whether or not there was to be further administrative processing. Under such circumstances, the Fifth Circuit was able to conclude that equitable modification of Title VII's procedural requirements was appropriate.

That equitable modification was appropriate in *Pinkard*, however, does not mean that equitable modification is appropriate here. In *Pinkard*, there was nothing to suggest that the plaintiffs in any way frustrated the EEOC's effort to investigate or conciliate the charges. The plaintiffs did not prematurely request their notices of right to sue, and the required statutory period was allowed to elapse. In contrast, in this case, plaintiff Berry refused to cooperate with the EEOC, thus frustrating the agency's ability to investigate or conciliate the charges; and plaintiffs Bouie, Jackson, Germany, Brown, and McClendon—who filed suit before they filed charges with the EEOC—requested their no-

tices of right to sue long before the 180-day statutory period had elapsed and long before the EEOC had any opportunity to perform the function assigned to it by Congress. While the statute provides for premature issuance of a notice of right to sue when the EEOC certifies that conciliation will not be possible within 180 days, the EEOC gave no such certification in this case. Furthermore, in his letter to the EEOC, plaintiffs' counsel made clear that he had no interest in permitting the EEOC to first attempt a settlement of his clients' grievances. Instead, he wanted his clients to proceed directly to federal court through Franceslon Forehand's lawsuit, and he perceived the filing of the 1983 EEOC charges as little more than a necessary technicality. Under such circumstances, the need for equitable modification of the conditions precedent to suit is anything but obvious.

Importantly, apart from his reliance on *Pinkard* and its progeny, the special master did not explain why plaintiffs Bouie, Jackson, Germany, Brown, and McClendon were entitled to equitable modification of the conditions precedent to suit. In fact, he cited neither facts nor principles of equity to support his decision. Because *Pinkard* is distinguishable from the case at bar, and because the record in this case suggests no reason why a deviation from established procedures should be sanctioned, this court finds that the special master abused his discretion when he invoked an equitable doctrine to cure the failure of plaintiffs Bouie, Jackson, Germany, Brown, and McClendon to satisfy the conditions precedent to suit.

The Supreme Court has said more than once that "experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (reversing the appellate court's decision to equitably toll Title VII's 90-day statute of limitations) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)).[5] Mindful of the

---

5. This court notes with interest the Supreme Court's recent decision in *McNeil v. United*

*States*, ⸺ U.S. ⸺, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). In *McNeil*, the Court af-

lessons taught in *Baldwin,* and finding no reason to excuse the failure of plaintiffs Wynn, Johnson, Berry, Bouie, Jackson, Germany, Brown, and McClendon to adhere to the procedural requirements specified by Congress, this court concludes that Franceslon Forehand is the only plaintiff who independently satisfied the requisite conditions precedent to suit. Indeed, review of the second amended complaint reveals that Forehand is also the only plaintiff who properly *alleged* that she satisfied the necessary Title VII requirements.

### E. *The Single Filing Rule*

Forehand may be the only plaintiff to satisfy the conditions precedent to suit, but she is not necessarily the only plaintiff entitled to sue in federal court. The Eleventh Circuit has long recognized that a plaintiff who has not filed an EEOC charge may nonetheless rely on another plaintiff's charge *if* (1) the charge being relied upon was timely and not otherwise defective, and (2) the individual claims of the filing and non-filing plaintiffs arose out of similar discriminatory treatment in the same time frame. *Jackson v. Seaboard Coast Line R.R.,* 678 F.2d 992, 1011–12 (11th Cir.1982); *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498–99 (5th Cir. 1968).

The "single-filing rule" was originally invoked in the context of a class action to permit class members bringing a Title VII action to rely on a co-plaintiff's EEOC charge. *Oatis,* 398 F.2d at 496. In *Oatis,* the EEOC-filing plaintiff complained that the defendant's use of segregated locker rooms was discriminatory. The Fifth Circuit held that other black employees affected by the *same discriminatory policy* could rely on the EEOC charge filed by their co-plaintiff. While they could join in the lawsuit, however, their participation was limited to the issues properly raised in their co-plaintiff's EEOC charge.

The single-filing rule has since been extended (1) to permit intervenors to rely on the EEOC charge filed by an original plaintiff, *Wheeler v. American Home Products Corp.,* 582 F.2d 891, 897–98 (5th Cir.1977); (2) to permit plaintiffs in a multiple-plaintiff, non-class action lawsuit to rely on a charge filed by one of their co-plaintiffs, *Crawford v. United States Steel Corp.,* 660 F.2d 663, 665–66 (5th Cir. Unit B 1981); and (3) to permit a plaintiff in one lawsuit to rely upon the EEOC charge filed by a different plaintiff in a different lawsuit. *Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446 (11th Cir. 1993). While they extended use of the rule, however, the courts in *Oatis, Wheeler, Crawford,* and *Calloway* consistently recognized one limiting principle: the EEOC must first be given the opportunity to settle employee grievances. As the Eleventh Circuit wrote in *Calloway,* "[b]y requiring that the relied upon charge be otherwise valid, and that the individual claims of the filing and non-filing plaintiff arise out of similar discriminatory treatment in the same time frame, we have ensured that no plaintiff be permitted to bring suit until the EEOC has been given the opportunity to address the grievance." 986 F.2d at 450. The message in each case was clear: the purpose of the filing requirement—to permit the EEOC to first attempt settlement of grievances through conference, conciliation, and persuasion—was, and is, to be preserved and not usurped by the district courts.

In this case, because Franceslon Forehand was the only plaintiff to satisfy the conditions precedent to suit in this court, the entitlement of all other plaintiffs to seek relief rests on the single-filing rule. As explained in *Oatis,* 398 F.2d at 499, the single-filing plaintiffs—Wynn, Johnson, Berry, Bouie, Jackson, Germany, Brown, and McClendon—must seek relief within the periphery of the issues that Forehand has standing to raise and has, in fact, raised in her EEOC charge. *See Oatis,* 398 F.2d at 498 ("once an aggrieved person raises a particular issue with the EEOC *which he has standing to raise,* he may bring an action for himself and the class

firmed the Seventh Circuit's decision to affirm the dismissal of a Federal Tort Claims Act ("FTCA") case where—contrary to the plain wording of the statute—the plaintiff filed suit before, rather than after, receiving his notice that

the administrative agency denied his claim. The Court concluded that receipt of agency notice after suit was filed did not excuse the plaintiff's failure to comply with the FTCA's procedural requirements.

of persons *similarly situated*") (emphasis added). Stated differently, the participation of the single-filing plaintiffs in this lawsuit is limited by the scope of the grievance raised by Forehand in her EEOC complaint.

## F. *The Actionable Claims*

In the charge that she filed with the EEOC on September 28, 1981, Forehand alleged that, on September 25, 1981, the defendants refused to promote her to the position of ward supervisor in Unit 15 of the civil section in the hospital. While she complained that "[t]here [was] only one black ward supervisor," document 146, Composite Ex. A at 2, her complaint concerned the number of black supervisors in Unit 15 only. She did not allege in her original charge that the defendants engaged in a discriminatory practice—throughout the hospital—of denying promotions to black employees.

Forehand's charge was first investigated by the Florida Department of Health and Rehabilitative Services EEO Committee (the "Committee"). The Committee's investigation revealed that after responding to a vacancy announcement for the Unit 15 ward supervisor position, Forehand was interviewed for the job by a screening committee consisting of two blacks, Vivian Johnson and Walter West, and three whites, Ethel Rogers, Lavoris Joyner, and Charles Barfield. *See* Defendants' Ex. 10. Of the nine applicants, Forehand was given the second highest rating by the screening committee. A white woman was given a somewhat higher rating and—supposedly based on the committee's rating—was awarded the promotion by Ms. Nel Melzer, the appointing authority.

Based on its review of the evidence, the EEO Committee determined that the successful applicant was selected on the basis of non-discriminatory criteria including: (a) highest interview score, (b) more supervisory experience, and (c) slightly better performance evaluations. The EEO Committee also found that while there was only one black ward supervisor in Unit 15, forty percent of the ward supervisor positions at the hospital were filled by blacks as of October 18, 1981. Given its findings, the EEO Committee reported to the EEOC on March 15, 1982, that there was no reasonable cause to believe that the defendants had engaged in an unlawful employment practice as alleged by Ms. Forehand.

The EEOC advised the parties in February 1982 that it would conduct a fact-finding conference concerning Forehand's charges on March 12, 1982. On April 21, 1982, after the EEOC completed its fact-finding conference, Forehand amended her charge to include general allegations regarding a pattern and practice of racially discriminatory recruitment, hiring, job assignments, promotions, demotions, terminations, lay-offs, reprimands, seniority and affirmative action programs at the defendant hospital. She provided no specific instances of conduct to support her general allegations, and she did not allege that she had been personally aggrieved by anything other than the denial of her request to become a ward supervisor in Unit 15. Not surprisingly, the EEOC made a determination about the merits of Forehand's promotion claim—which had been investigated—but made no determination regarding her other more general allegations of discrimination—which had not been investigated. Reporting that it found no reasonable cause to believe that Ms. Forehand's allegations were true, the EEOC issued a notice of right to sue on January 3, 1983.

Mindful that Forehand's amended charge was filed within three hundred (300) days of the date she last experienced a promotion denial, the court shall assume that the pattern and practice allegations contained within that amended charge were, and are, a proper subject for this lawsuit. Even though the EEOC did *not* investigate the defendants' systemwide employment practices, it was given the opportunity to do so based on Forehand's timely amended charge. For single-filing purposes, then, the actionable claims include those claims arising from promotion denials that were allegedly the result of the defendant's systemwide pattern and practice of racial discrimination. Ms. Forehand, along with each of the single-filing plaintiffs, raised such claims in this case.

Though they were given ample opportunity to present their pattern and practice case,

the plaintiffs failed to convince the special master that the defendants engaged in a systemwide practice of discrimination. Obviously, they cannot obtain relief for harms allegedly caused by a policy of discrimination that they attempted, but failed, to prove. The pattern and practice claim having failed, all requests for relief based upon Forehand's amended EEOC charge must be denied.

■ Along with the pattern and practice allegations raised in her amended EEOC charge, Forehand alleged a particular instance of discrimination in her original charge. If Forehand were able to prove that the defendants intentionally discriminated against her in that particular instance, she would be entitled to relief. Moreover, the single-filing plaintiffs might also be entitled to relief *if* they were able to establish that they were harmed by "similar discriminatory treatment."

The plaintiffs in this case would probably suggest that the alleged discriminatory treatment was similar because it resulted in a promotion denial for each plaintiff. To be sure, in each instance, the conduct purportedly causing the injury involved decisionmaking regarding a promotion, rather than a discharge, hiring, transfer, or some other type of employment action. Under such circumstances, *if* superficial similarities were enough to invoke the single-filing rule, and *Oatis, Wheeler, Crawford,* and *Calloway* do *not* suggest that they are, reliance on the single-filing rule might be justified.

Reliance on the single-filing rule is probably *not* justified, however, where, as here, the similarities in treatment are superficial and the differences in treatment are significant. The special master found—and this court is unable to say that his finding was clearly erroneous—that the acts challenged by the plaintiffs were discrete events involving different decision-makers using different selection processes for different jobs in different hospital units at different times.

Forehand alleged in her original charge that, as a result of actions taken by a white Unit 15 supervisor and a screening committee comprised of three white and two black co-workers, she was denied a promotion to ward supervisor in Unit 15 of the hospital in September 1981. No other plaintiff alleged or attempted to prove that he or she was denied promotion to a position as ward supervisor either in Unit 15 or in any other unit of the hospital within the relevant time period. No other plaintiff, when applying for promotions to various positions in various units throughout the hospital, was interviewed, evaluated, or rejected by any of the persons involved in the 1981 Unit 15 ward supervisor selection process experienced by Forehand. Unlike Forehand, some of the single-filing plaintiffs were both interviewed and evaluated by an appointing official without input from an employee screening committee. Others were evaluated by one or more appointing officials but were given no interview. Still others, like Forehand, were first interviewed and evaluated by screening committees, but the committees in each instance were comprised of different individuals. While Forehand sought a position in the civil section of the hospital, most of the single-filing plaintiffs sought positions in the hospital's forensics section. During and after 1982, when many of the challenged promotion denials took place, the two sections had independent personnel offices, one headed by a white manager, the other headed by a black manager. These offices independently reviewed both employee applications as well as the decisions made by the appointing authorities. Rating scales, intended to take some of the subjectivity out of the selection processes, were used in most every instance; but the rating scales were different depending upon the positions being sought and the decisionmakers devising the scales. In sum, there were many differences—*important* differences—in the treatment experienced by the various plaintiffs.

Given these differences in treatment, and absent a discriminatory policy that was experienced by all, the single-filing plaintiffs should not be permitted to rely on Forehand's original charge of discrimination. These plaintiffs made the deliberate decision to by-pass EEOC investigation of their individual charges and to, instead, join forces with Forehand on the strength of Forehand's amended, not her original, EEOC charge. When they failed to prevail on the claims

contained within that amended charge, plaintiffs Wynn, Johnson, Berry, Bouie, Jackson, Germany, Brown, and McClendon lost the only actionable claims they had in this court.[6]

## G. *Disparate Treatment Proof*

The single-filing plaintiffs were entitled to rely on Forehand's amended EEOC charge, but they failed—on the merits—to prove the claims supported by such charge. Because they were not, and are not, entitled to rely on Forehand's original EEOC charge, Forehand has the only remaining actionable claim in this lawsuit—her claim of intentional disparate treatment.

The United States Supreme Court recently re-emphasized an important principle of Title VII jurisprudence: a Title VII plaintiff *at all times* bears the burden of proving the ultimate fact of intentional discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), once a plaintiff establishes a prima facie case of discrimination, a presumption of unlawful discrimination arises, requiring judgment in the plaintiff's favor *unless* the defendant comes forward with an explanation. This presumption places upon the defendant the burden of producing evidence that the adverse employment actions were taken for legitimate, nondiscriminatory reasons—reasons that, if believed by the trier of fact, would support a finding that the employment actions were *not* the product of unlawful discrimination. Production of such evidence, whether the evidence is persuasive or not, satisfies the defendant's burden and rebuts the presumption of intentional discrimination. The *McDonnell Douglas* framework then becomes irrelevant, and the trier of fact is left to decide the ultimate question of fact: whether the plaintiff has proven that the defendant has intentionally discriminated against him because of his race.

The special master heard Franceslon Forehand testify at the first phase of what was supposed to be a bifurcated trial. He also heard at least one defense witness testify about the nondiscriminatory reasons for the decision challenged by Forehand. Though his finding was perhaps premature, given the purported bifurcated nature of the proceedings, the special master evaluated the evidence of disparate treatment and determined that Forehand failed to establish that the defendants intentionally discriminated against her on the basis of race. This court must accept the master's finding unless his finding was clearly erroneous. Unfortunately, it is unclear whether the record before this court—as it pertains to Forehand's individual claim—is complete. The record does not include, for example, a transcript of Forehand's trial testimony. Although the parties have indicated that the special master heard not only all of the pattern and practice evidence but also all of the evidence concerning the plaintiffs' individual disparate treatment claims, the court recognizes that the record might have been prepared differently had the parties known that the special master would adjudicate their individual claims at the conclusion of the phase-one proceedings. This court, therefore, will postpone its review of Forehand's individual claim until the parties have had the opportunity to supplement the record, should they so desire.

Accordingly, it is ORDERED:

1. The special master's report and recommendation, as it relates to the plaintiffs' claim that the defendants engaged in a pattern and practice of discrimination, is ADOPTED. None of the plaintiffs is entitled to any relief based upon such a claim.

2. Franceslon Forehand shall have until November 22, 1993, to supplement the record, if she so desires, regarding—and limited to—her claim of disparate treatment.

3. The defendants shall have until December 6, 1993, to file a response, again

---

6. The special master considered the merits of some, but not all, of the single-filing plaintiffs' claims. Of those claims that he considered, he found not one to be meritorious. While the single-filing plaintiffs did not include, in the rec-

ord, the transcripts of their trial testimony, this court cannot—based on the record before it—say that the special master's findings were clearly erroneous.

·limited to Franceslon Forehand's claim of disparate treatment.

4. Entry of judgment will be deferred to allow such *limited* supplementation of the record, if any there is to be.

DONE AND ORDERED.