Malcolm D. FLAVEL, individually and on behalf of all other persons similarly situated, Group Representative Plaintiff,

and

Robert F. Cnare, James R. Conradt, Major Coxhill, Robert K. Elbel, Malcolm D. Flavel, Russell H. Graf, Robert L. Isferding, Robert E. Jones, Chalasani C. Rayan (deceased), Richard Spoonamore, and Ronald J. Weiss, Individual Plaintiffs,

and

The United States Equal Employment Opportunity Commission, Intervenor Plaintiff representing the 11 named plaintiffs above, plus Robert W. Belling, Conrad Heinemann, William D. Meager, Byron K. Smay, and Robert Van Dyke, as additional plaintiffs represented by the United States,

v.

SVEDALA INDUSTRIES, INCORPORATED and Svedala, Incorporated, Defendants.

No. 92–C–1095.

United States District Court, E.D. Wisconsin.

Aug. 2, 1994.

Jeffrey R. Ansel, Winthrop & Weinstine, St. Paul, MN, for Malcolm D. Flavel, Robert E. Jones.

Laurie A. Knocke, Stephen J. Snyder, Winthrop & Weinstine, St. Paul, MN, for Peter Flavel.

William H. Levit, Jr., Howard A. Pollack, Godfrey & Kahn, Thomas N. Harrington, Cook & Franke, John W. Brahm, Foley & Lardner, Milwaukee, WI, Steven P. Handler, Stephen D. Erf, David B. Bayless, McDermott, Will & Emery, Chicago, IL, for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Before the Court are the defendants' Motion for Severance, Motion to Bar Proposed Expert Testimony of Dr. Benson Rosen, and Motion to Bar Proposed Expert Testimony of Dr. Dale Belman in the above-captioned matter. For the following reasons, each motion is denied.

### I. *MOTION FOR SEVERANCE*

As noted by the defendants, this matter involves age discrimination charges brought by sixteen former employees of two of the twelve business units operated by defendant Svedala Industries in the United States. Seven of the charges involve reductions in force at the Milwaukee (West Allis), Wisconsin business unit, which was primarily engaged in the pyroprocessing and grinding mill equipment businesses. Nine of the charges involve the actual termination of three employees and alleged constructive discharge of six employees at the crushing and screening business unit located in Appleton, Wisconsin.

According to the defendants, because "the terminations at the Milwaukee unit were markedly different from the terminations at the Appleton unit," and neither arose from the same transaction or occurrence under Federal Rule of Civil Procedure 20(a) ("Rule 20(a)") nor are "similarly situated" under the Age Discrimination in Employment Act ("ADEA"), separate trials should be conducted for each group in this case. They indicate that six of the seven charges relating to the Milwaukee unit involved employees terminated in the February 13, 1991 reduction-in-force "pertaining solely to the Milwaukee unit"; the seventh employee was terminated on January 26, 1990 during a merger of operations. The defendants argue that three of the nine Appleton charges involved actual terminations due to performance deficiencies or consolidation, while "[t]he other six plaintiffs who were employed by the Appleton unit voluntarily retired or quit but are now alleging that they were constructively discharged." According to the defendants, Dr. Ki Joung, the General Manager of the Milwaukee unit, was the decisionmaker in the Milwaukee reduction-in-force, while William Guernsey, the General Manager of the Appleton unit, was the decision-maker in the Appleton unit terminations. The defendants claim that, because "discriminatory conduct or statements by employees other than the decisionmaker are irrelevant" in determining liability under the ADEA, "statements or conduct by Dr. Joung and his managers would be inadmissible to support the charges of the Appleton unit plaintiffs" and "statements or conduct by Mr. Guernsey and his managers would be inadmissible to support the charges of the Milwaukee unit plaintiffs." Separate trials are required, they assert, because they would be "severely prejudiced" by the admission of evidence impacting one unit in their defense of the other unit which "[n]o cautionary instruction could cure"; they further argue that "separate trials would not delay the resolution of [ ] this case because little overlap in the admissible evidence would exist."

The plaintiffs respond that the defendants "engaged in a pattern or practice of age discrimination against older employees ... [as] evidenced in Svedala's hiring decisions, its assessment of plaintiffs and others for promotion, its response to transfer requests, the work environment it provided, and its selection of persons for termination." They claim that this policy of age discrimination was directed by Svedala's Swedish parent corporation and was implemented and enforced in the United States by Svedala's corporate management, offering evidence

which they claim supports such conclusion. Based on this evidence, the plaintiffs argue that they are "similarly situated" under the ADEA and therefore entitled to proceed with a representative action in one trial. They claim that the "similarly situated" standard is to be broadly construed and does not require a showing of identical circumstances, and that they fit this definition as "victims of a common plan, policy and scheme of illegal discrimination by Svedala." In addition, they argue that the EEOC has statutory authority under the ADEA to bring suit on behalf of the plaintiff class without meeting the "similarly situated" requirement applicable to private suits. According to the plaintiffs, neither they nor the EEOC, as ADEA litigants, need comply with the class action requirements of Federal Rule of Civil Procedure 23. They further claim that joinder of their allegations into one action is proper under Rule 20(a). Finally, the plaintiffs argue that Svedala will not be prejudiced by one trial because (1) anecdotal testimony is admissible in a pattern or practice discrimination claim, and (2) severance would result in "a large duplication of effort, particularly in terms of the proof of the pattern or practice of age discrimination."

█ Before addressing the propriety of separate trials for the Appleton and Milwaukee plaintiffs, a brief discussion as to the type of action involved in this case is warranted. The ADEA incorporates by reference the enforcement provisions of the Fair Labor Standards Act ("FLSA"), including 29 U.S.C. § 216(b), which allows an employee to sue his or her employer "for and in behalf of himself or [herself] *and other employees similarly situated.*" 29 U.S.C. § 626(b). *See King v. General Elec. Co.*, 960 F.2d 617, 621 (7th Cir.1992); *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir.1975). "This procedure preempts the class action procedure under Federal Rule of Civil Procedure 23," which is the only type of representative action authorized under the Federal Rules; thus, Rule 23 opt-out and class certification requirements are inapplicable in ADEA cases, and parties may "opt-in" if

similarly situated to the plaintiff. *King* at 921. *See also Anson v. University of Texas Health Science Ctr.*, 962 F.2d 539, 540 (5th Cir.1992); *LaChapelle* at 289. Presumably, this also obviates the need to consider permissive joinder requirements under Rule 20(a) as, by definition, a representative action, whether brought under Rule 23 or otherwise, is mutually exclusive from a multiple-plaintiff action brought by joinder.[1] To proceed as a representative action under the ADEA, then, the plaintiffs need only show that they are "similarly situated," and not that their claims "arose out of the same transaction or occurrence" under Rule 20(a) or that they meet Rule 23(a) class action prerequisites. The "similarly situated" requirement, in turn, "is considerably less stringent than the requirement of [Rule 23(b)(3) ] that common questions 'predominate,'" *Heagney v. European Am. Bank,* 122 F.R.D. 125, 127 n. 2 (E.D.N.Y.1988), or, presumably, the Rule 20(a) requirement that claims "arise out of the same action or occurrence."

█ The EEOC, as plaintiff/intervenor, has also brought a representative action in this matter on behalf of the eleven individual plaintiffs as well as six additional parties. Again, the ADEA incorporates by reference the enforcement provisions of the FLSA, including 29 U.S.C. §§ 216(c) and 217, which allow the EEOC to bring suit on behalf of aggrieved parties. 29 U.S.C. § 626(b). *See Glass v. IDS Fin. Serv., Inc.,* 778 F.Supp. 1029, 1081 (D.Minn.1991). Unlike a private representative suit, the EEOC's authority to bring such an action is not limited to circumstances where the plaintiffs are "similarly situated." *Id.* Nor is its authority compromised when it intervenes rather than bringing its own direct action. *Id.* Assuming that this statutory authority preempts the class action procedure of Rule 23 and the joinder requirements of Rule 20(a), the EEOC may proceed in this matter on behalf of the plaintiffs whether or not they are "similarly situated," common questions of law or fact "pre-

---

1. Rule 23(a) evidences this by listing as a prerequisite to a class action that the class be "so numerous that joinder of all members is impracticable"; in essence, a multiple-plaintiff claim is either brought by joinder or by representative action.

**554**

dominate," or claims "arise out of the same action or occurrence."

 The private plaintiffs claim to have met the "similarly situated" standard by alleging pattern or practice age discrimination emanating from Svedala's Swedish parent corporation.[2] The defendants acknowledge the inter-unit similarity in the constructive and/or actual discharge of plaintiffs at both the Appleton and Milwaukee facilities for purposes of conducting two separate representative-action trials under the ADEA; they argue, however, that the absence of intra-unit similarity renders a single trial inappropriate. In the Seventh Circuit, "[p]laintiffs who raise a pattern or practice class claim have as their initial burden the task of demonstrating that unlawful discrimination has been the regular policy of the employer, *i.e.,* that 'discrimination was the company's standard operating procedure—the regular rather than the unusual practice.'" *Coates v. Johnson & Johnson,* 756 F.2d 524, 532 (7th Cir.1985) (quoting *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977)). In such circumstances,

> "[t]he focus 'often will not be on individual [employment] decisions, but on a pattern of discriminatory decision-making.' [*Teamsters* at 360 n. 46, 97 S.Ct. at 1867 n. 46.] The plaintiff's prima facie case will thus usually consist of statistical evidence demonstrating substantial disparities in the application of employment actions as to minorities and the unprotected group, buttressed by evidence of general policies or specific instances of discrimination ...
>
> ... The focus in a class action is 'on a pattern of discriminatory decision-making,' [*Teamsters* at 360 n. 46, 97 S.Ct. at 1867 n. 46], of which specific allegations of alleged discrimination may be a part, although not always controlling if the number of such instances is not significant. The class action 'may fail even though discrimination against one or two individuals has been proved.' *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 878, 104 S.Ct. 2794, 2801, 81 L.Ed.2d 718 (1984). The pattern or practice claim may also fail—

despite any statistical evidence offered by plaintiffs—if the defendant articulates a nondiscriminatory, nonpretextual reason for *every* discharge. *See Paxton v. Union National Bank,* 688 F.2d 552, 567 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). On the other hand, the class claim does not fail just because the district court finds that the company has satisfactorily explained the discharges of the named class representatives and any other testifying employees. *Boykin v. Georgia–Pacific Corp.,* 706 F.2d 1384, 1393 (5th Cir.1983), *cert. denied* 465 U.S. 1006, 104 S.Ct. 999, 79 L.Ed.2d 231 (1984). Since strong statistical evidence, without anecdotal evidence, may in some cases form a prima facie case, *see Hazelwood School District v. United States,* 433 U.S. 299, 307–08, 97 S.Ct. 2736, 2741–42, 53 L.Ed.2d 768 (1977); *Segar [v. Smith],* 738 F.2d [1249] at 1277–78, [(D.C.Cir.1984)], a defendant's successful rebuttal of each alleged instance of discrimination weakens, but does not defeat, a plaintiff's class claim. Neither statistical nor anecdotal evidence is automatically entitled to reverence to the exclusion of the other."

*Coates* at 532–33. A formal written policy is not required to establish such a pattern or practice; an informal or unstructured method of decision-making may be sufficient to invoke this doctrine. *See Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757, 760–61 (9th Cir.1980); *Glass,* 778 F.Supp. at 1052.

 The Court shall defer ruling on the efficacy of the plaintiffs' claim of pattern or practice discrimination in this case until we resolve the defendants' pending Motion for Summary Judgment. For purposes of this motion, however, we find it appropriate to outline the procedure through which this case may proceed through final judgment. Absent resolution through settlement or summary judgment, the plaintiffs will present their pattern or practice age discrimination claim to the jury. Under *Teamsters,* pattern or practice discrimination actions are typically bifurcated at trial into a liability phase, where the plaintiffs must prove dis-

---

**2.** This is also theory employed by the EEOC.

criminatory policy by a preponderance of the evidence, and a remedial phase, where the scope of relief awardable to each individual plaintiff is litigated. *Teamsters,* 431 U.S. at 361, 97 S.Ct. at 1867; *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 876, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1983); *In re Western District Xerox Litigation,* 850 F.Supp. 1079, 1083 (W.D.N.Y.1994); *Forehand v. Florida State Hosp. at Chattahoochee,* 839 F.Supp. 807, 813 (N.D.Fla.1993). If the plaintiffs prevail in the liability phase, "[t]he proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *Teamsters,* 431 U.S. at 362, 97 S.Ct. at 1868. This presumption carries over into the remedial phase of trial, where the defendants bear the burden of demonstrating that the individual plaintiffs were not victims of the discriminatory practice, and damages are litigated. *Xerox,* 850 F.Supp. at 1083. Under this procedure, efficiency is best enhanced if the same jury makes liability and remedial factual findings, as (1) the plaintiffs need not reintroduce in the remedial phase anecdotal evidence already presented in the liability phase, (2) the defendants need not reintroduce in the remedial phase defenses already presented in the liability phase, and (3) conflicting discrimination findings as to plaintiffs whose cases are litigated in the liability phase are avoided.

■ If, on the other hand, the defendants are found either on summary judgment or in the liability phase at trial not to have engaged in pattern or practice age discrimination, then the linchpin to the private plaintiffs' claim that they are "similarly situated" as a single group disappears and, despite the EEOC's remaining representative action, the plaintiffs may be required to pursue individual discrimination claims in separate trials for each business unit.[3] Different juries would make factual findings in each trial, and the plaintiffs, rather than receiving a presumption of discrimination, would instead be re-

quired to start anew under the *McDonnell Douglas* format. *See, e.g., Forehand,* 839 F.Supp. at 813. Until that time, however, the defendants' Motion for Severance remains premature and must be denied.

## II. *MOTION TO BAR EXPERT TESTIMONY OF DR. DALE BELMAN*

The plaintiffs have named Dr. Dale Belman, an associate professor of Economics and Industrial Relations at the University of Wisconsin–Milwaukee, as a testifying expert as to statistical evidence purporting to support their claim of pattern or practice discrimination by Svedala. According to the defendants, because the Milwaukee and Appleton terminations are independent of each other, Dr. Belman impermissibly combined the employee populations of the Milwaukee unit and Appleton unit into a single sample for his statistical analysis; they characterize this as "an attempt to introduce otherwise irrelevant and prejudicial evidence." The defendants also claim that Dr. Belman's statistical analysis "assumes the desired conclusion" by including the six Appleton employees alleging constructive discharge, and "is irrelevant because it fails to consider any variables other than age." They further argue that Dr. Belman's statistical findings regarding "the changing age distribution of the commingled workforces of the Milwaukee and Appleton units" and "the age distribution of employees hired by the Milwaukee and Appleton units between 1988 and 1992" are not probative as to its individual discharge decisions. Finally, they claim that Dr. Belman "artificially deflated" the overall number of employees in the 50 and under age category by using 1988 ages, rather than 1991 ages, in performing his analysis.

The plaintiffs respond that the defendants (1) again ignore their pattern or practice discrimination claim, (2) argue as to the weight, but not the admissibility, of Dr. Belman's testimony and analysis, and (3) base their motion on "legally insufficient allegations of infirmities in the factual foundation

---

**3.** The plaintiffs have thus far only characterized their claim as one involving pattern or practice age discrimination by the defendants; if they also

intend to pursue non-pattern or practice claims, such issues should be clarified prior to trial.

for Belman's analysis." According to the plaintiffs, Dr. Belman is qualified as an expert under Federal Rule of Evidence 104(a) ("Rule 104(a)"), his statistical evidence is relevant in a pattern or practice discrimination claim under Federal Rule of Evidence 402 ("Rule 402"), its admissibility is not "substantially outweighed by the danger of unfair prejudice" under Federal Rule of Evidence 403 ("Rule 403"), and it is admissible as scientific evidence under Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, ___ U.S. ___, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The plaintiffs further argue that the defendants' criticisms of Dr. Belman's techniques go to the weight, rather than the admissibility, of his statistical evidence, and that "[t]he jury, as factfinder, should be permitted to evaluate Dr. Belman's testimony and weigh Svedala's contrary assertions." Finally, the plaintiffs claim that the defendants' criticisms are either factually incorrect or inconsistent with applicable law.

■ In *Daubert*, the Supreme Court outlined the method by which district court judges should analyze proposed expert testimony under Rule 702:

"Faced with a proffer of expert scientific testimony, [ ] the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."

*Daubert*, 113 S.Ct. at 2796. In assessing scientific knowledge, or reliability, courts should consider whether the scientific theory or technique utilized (1) "can be (or has been) tested," (2) "has been subjected to peer review and publication," (3) has "a known or potential rate of error," and (4) is "generally accepted" within the relevant scientific community; this inquiry is "a flexible one," focused on "methodology, not conclusions." *Id.* 113 S.Ct. at 2796–97. In assessing helpful-

ness to the factfinder, or relevance, courts should seek "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* 113 S.Ct. at 2796. The court should also consider Rules 703 and 403 in its analysis. *Id.* 113 S.Ct. at 2797–98.

■ Dr. Belman's proposed testimony passes the *Daubert* test. The parties agree that Dr. Belman intends to present scientific knowledge, and that he is a qualified expert under Rule 104(a); however, the defendants challenge his methodology on several counts. As an initial matter, the Court finds Dr. Belman's proposed testimony admissible as to the liability phase of the plaintiffs' pattern or practice age discrimination claim. As previously indicated, a plaintiff typically establishes a prima facie case of pattern or practice discrimination by presenting both statistical and anecdotal evidence of discriminatory acts or conduct on behalf of the defendant. *Coates v. Johnson & Johnson*, 756 F.2d at 532. Where statistical evidence of discrimination is strong, however, anecdotal evidence need not be provided to make out a prima facie case. *Hazelwood*, 433 U.S. at 307–08, 97 S.Ct. at 2741; *Segar*, 738 F.2d at 1277–78. The defendants object to Dr. Belman's statistical analysis, in part, because it combines the Milwaukee and Appleton units into a single sample base in assessing allegedly discriminatory decisionmaking. While this procedure may be inappropriate in a non-pattern or practice context, it is clearly proper where, as here, the plaintiffs charge that the defendants effectuated a company-wide discriminatory policy on the basis of age. Presumably, company-wide preferences for below–40 employees would be reflected throughout its operating facilities; Dr. Belman's statistical analysis, then, would be properly admitted during the liability phase of the plaintiffs' pattern or practice discrimination trial. If dissatisfied with Dr. Belman's testimony, the defendants, of course, may critique his method during cross-examination and present statistical evidence disproving age discrimination as to each separate unit, or the company as a whole, through their own experts. If, on the other hand, the defendants are found either on summary judgment or in the liability phase at trial not

to have engaged in pattern or practice age discrimination, then the defendants may have a proper basis for objection. Until such time, however, the defendants' objection on this basis is premature and must be denied.

The defendants' remaining objections are also unpersuasive. The statistical and multivariate analysis performed by Dr. Belman have been clearly tested and subjected to peer review, are generally accepted within the scientific community, and have a low rate of error in assessing the variables considered. The defendants nevertheless criticize the reliability of Dr. Belman's methods on several counts, claiming that he "assumes his desired conclusion" and "artificially inflates his findings" by using employee ages as of January 1, 1988. These objections, however, go to the weight, rather than the admissibility, of Dr. Belman's testimony, and are properly raised on cross-examination or during rebuttal; as a result, the Court finds Dr. Belman's proposed testimony to be reliable as scientific evidence. The defendants raise several further objections based on relevancy, claiming that Dr. Belman's statistical analysis is irrelevant because "it fails to consider any variables other than age" and it considers "new hires, total separations, and age distribution." The former complaint is not persuasive on at least two counts; Dr. Berman's multivariate analysis, while not controlling for location or occupation, is sufficiently complete to be admissible, and the plaintiffs do, in fact, challenge the veracity of evidence as to "other variables" provided by the defendants during discovery. In such circumstances, Dr. Berman's failure to include such variables in his analysis affects its probativeness, rather than admissibility, and the defendants' objections should be raised during cross-examination and rebuttal. *See Bazemore v. Friday*, 478 U.S. 385, 400, 106 S.Ct. 3000, 3009, 92 L.Ed.2d 315 (1985). The defendants' latter objection, in turn, while arguably efficacious in a non-pattern or practice context, is not persuasive when, as in this case, the defendants are charged with effectuating a company-wide discriminatory policy involving the termination of older managerial-level employees *in favor of* younger employees. Again, should the plaintiffs' pattern or practice claim reach trial, the defen-

dants should bring their criticisms as to the probativeness of Dr. Berman's analysis during cross-examination and rebuttal during the liability phase of proceedings. Finally, Dr. Berman's statistical analysis does not violate Rules 403 or 703; as a result, we must deny the defendants' motion to exclude his proposed testimony.

### III. *MOTION TO BAR EXPERT TESTIMONY OF DR. BENSON ROSEN*

■ The defendants object to the expert testimony of Dr. Benson Rosen, an industrial psychologist and professor at the University of North Carolina, on two grounds. They first argue that, because "most of the documents and statements cited in Rosen's report as evidence of Svedala's age bias are not attributable to the Svedala managers who made the actual termination decisions," Dr. Rosen relies on inadmissible evidence to reach his conclusions. Secondly, the defendants claim that, because Dr. Rosen's opinion will not add scientific, technical or other specialized knowledge necessary for the jury to understand the facts, it does not meet admissibility requirements under Rule 702. The defendants conclude by distinguishing this case from the circumstances in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

The plaintiffs respond by again suggesting that the defendants are ignoring "the fundamental nature of this class action lawsuit, namely that it is a multi-plaintiff case challenging Svedala's pattern or practice of age discrimination." According to the plaintiffs, Dr. Rosen's testimony is both relevant and reliable, and therefore admissible under Rule 702 and *Daubert*. They emphasize his background in "the study of stereotypes and how they can and do impact workers, a recognized area of scientific study for a professional social psychologist," and argue that his testimony would, in fact, be helpful to the jurors in providing background information as well as an expert opinion admissible under Federal Rule of Evidence 704. Finally, the plaintiffs indicate that, contrary to the defendants' objection, Dr. Rosen may rely on inadmissible facts in forming his opinions under Rule 703.

As previously indicated, the defendants' first criticism is not efficacious as long as the plaintiffs maintain a viable pattern or practice age discrimination claim. As to their second criticism, they again do not object to Dr. Rosen's qualifications under Rule 104(a) or to the reliability of his scientific method; instead, they argue that his proposed testimony will simply not be helpful to the jury, which is capable of identifying age discrimination without expert opinion. As noted by the plaintiffs, however, the Seventh Circuit has recognized that age discrimination "may simply arise from an *unconscious* application of stereotyped notions of ability rather than from a deliberate desire to remove older employees from the workforce." *Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665 F.2d 149, 155 (7th Cir.1981) (emphasis in original) (overruled on other grounds). Expert testimony on age stereotyping would make jurors aware of this fact in evaluating the evidence. Moreover, in a pattern or practice discrimination case, evidence of discriminatory conduct is often widely-dispersed and difficult to evaluate; expert testimony as to age stereotyping may again aid jurors in assessing liability. The defendants' expert, Dr. Arvey, properly notes that "all age-stereotypes are not negative and [ ] some are associated with positive traits like reliability, dependability and trustworthiness"; again, however, such criticism goes to the probativeness, rather than admissibility, of Dr. Rosen's proposed testimony. Nor does it appear that his proposed testimony would violate Rules 703 or 704 in any way. As a result, absent dismissal of the plaintiffs' pattern of practice claim prior to trial, the defendants' motion to exclude Dr. Rosen from testifying must be denied.

For the foregoing reasons, the defendants' Motion for Severance, Motion to Bar Proposed Expert Testimony of Dr. Benson Rosen, and Motion to Bar Proposed Expert Testimony of Dr. Dale Belman must each be DENIED in the above-captioned matter.

SO ORDERED.